# EXHIBIT 2

# UNISON HOMEOWNER COVENANT AGREEMENT

**Summary:** This covenant agreement sets forth your and Unison's rights and responsibilities under the Unison HomeOwner Agreement. It requires, for example, that you maintain the condition of the property, make mortgage and property tax payments on time, maintain property insurance and keep the property free of liens not approved by Unison.

This agreement also further describes how and under what circumstances Unison can exercise its option or otherwise act to protect the property. In addition, the agreement describes how the Unison HomeOwner Agreement may terminate under other your circumstances.

(Note: The wording of this summary is not itself a part of any agreement.)

Unison HomeOwner Agreement ID Number: FRX-408954

## TABLE OF CONTENTS


| Section | | Page |
|---|---|---|
| 1 | Intent of Agreement | 1 |
| 2 | Owner's Representations | 1 |
| 3 | Occupancy and Use of Property | 3 |
| 4 | Option Exercise Events | 3 |
| | 4.A Permitted Sale of Property | 3 |
| | 4.B End of the Term | 5 |
| | 4.C Death of the Last Surviving Signatory | 6 |
| | 4.D Material and Uncured Event of Default | 7 |
| 5 | Special Termination by You | 8 |
| 6 | Voluntary Release by Investor | 9 |
| 7 | Investor Rights and Remedies | 9 |
| 8 | Maintenance and Inspection of Property | 10 |
| 9 | Possible Adjustments to Value | 10 |
| | 9.A Remodeling Adjustment | 10 |
| | 9.B Deferred Maintenance Adjustment | 12 |
| 10 | Appraisal and Appraisal Expenses | 12 |
| 11 | Debt Limits, Property Obligations and Loans | 13 |
| 12 | Taxes and Assessments | 14 |
| 13 | Protective Advances | 14 |
| 14 | Insurance Coverage | 15 |
| 15 | Distribution of Insurance Proceeds for Losses | 16 |
| 16 | Condemnation of Property | 17 |
| 17 | Multiple Owners | 17 |
| 18 | Revocable Trusts | 17 |
| 19 | Miscellaneous Provisions | 18 |
| 20 | Arbitration | 20 |

## 1 Intent of Agreement

1.1 This Unison HomeOwner Covenant Agreement ("Covenant") is made between LE YANG ("you") and Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("Investor").

1.2 The Effective Date of this Agreement is February 16, 2022.

1.3 This Covenant is made together with and incorporates: (1) the Unison HomeOwner Option Agreement ("Option Agreement"); (2) the Unison HomeOwner Security Instrument ("Security Instrument"); and (3) the Unison HomeOwner Recorded Memorandum ("Recorded Memorandum"). The term Unison HomeOwner Agreement or Agreement encompasses all four of these documents.

1.4 All defined terms used in this Covenant and elsewhere in the Unison HomeOwner Agreement are capitalized. Further, for ease of reference, Schedule A to this Covenant provides an alphabetized index displaying where you may find the meaning of every defined term.

1.5 This Covenant sets forth the representations, warranties, duties and covenants of you and Investor during the Term of the Option and whenever reasonable or necessary to protect the rights of the parties.

## 2 Owner's Representations

2.1 Good and Marketable Title. As of the Effective Date, all of you, individually and collectively, will appear on the record title to the Property as holding fee simple title to one hundred percent (100%) of the Property; you will have good and marketable title to the Property, which will be free of any license, easement, or other encumbrance or restriction against the title to the Property, other than Permitted Encumbrances and Approved Existing Loans, which are defined in the bullets below.

- "Permitted Encumbrance" means all licenses, easements, or other title restrictions to the Property that exist as of the Effective Date, and are listed in the property report obtained in connection with the Property Purchase, plus any additional licenses, easements or title restrictions agreed to in writing by Investor after the Effective Date.
- "Approved Existing Loan" means any loan secured by the Property which originated simultaneously with the Unison HomeOwner Agreement or was approved in writing by Investor as of the Effective Date.

2.2 You are one or more individuals with the legal power and full capacity to enter into and to consummate all transactions contemplated by the Unison HomeOwner Agreement. If the Property is to be held in a revocable trust, revocable living trust, *inter vivos* trust, revocable family trust or similar trust established in accordance with the laws of any state ("Revocable Trust"), then you have executed and delivered to Investor the "Revocable Trust Rider" (a rider to the Security Instrument), warranting the identical legal power, right and authority of the trustee(s) and trustor(s).

2.3 You warrant that there is no litigation or other dispute, pending or threatened, against you or the Property that might adversely affect the value of the Property or your ability to perform your obligations under the Unison HomeOwner Agreement.

2.4 You acknowledge that the Unison HomeOwner Agreement is not offered by Investor as a source of short-term funding or for the funding of investment in residential real estate with the intention of near-term resale of a property, or for trading or price speculation in home prices by real property dealers, traders, re-sellers, or otherwise, and instead is offered for the purpose of

accessing existing equity by homeowners who intend to occupy their property until at least the third anniversary of the Effective Date. Your intent is consistent with this purpose.

2.5 You warrant that the use and occupancy of the Property are fully compliant with all state, federal and local laws, zoning ordinances, and regulations, including environmental prohibitions.

2.6 You warrant there are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Investor which are now known to or could reasonably have been discovered by you, which could affect the use or value of the Property. You acknowledge that evidence of misrepresentation or non-disclosure as to the condition of the Property by you raises a presumption of bad faith and a breach of the Unison HomeOwner Agreement.

2.7 You understand that granting Investor the Option and entering into the Unison HomeOwner Agreement can have significant tax, financial and estate planning consequences. You acknowledge that Investor has urged you to discuss the Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Agreement with respect to your particular situation. You are not relying on any information or representation by Investor, its agents, affiliates, officers, or employees regarding: (a) the value of the Property; and (b) the advisability of you purchasing the Property or entering into the Unison HomeOwner Agreement, including but not limited to tax, legal, financial, and estate planning consequences. You warrant you have had the opportunity to seek independent advice regarding such matters.

2.8 With respect to any residents who do or will occupy the Property but who are not signatories to the Agreement ("Non-Owner Occupants"), you and they have executed Exhibit B to this Covenant, which is referred to here as the "Non-Owner Occupant Disclosure and Acknowledgment."

2.9 You have promptly delivered to Investor all reports, disclosures, inspections, estimates and other documents provided to you in connection with the initial purchase of the Property with Investor's payment to you of the Initial Payment (the "Property Purchase"), which pertain to conditions on or affecting the Property or which might otherwise affect the value of the Property. All documentation and information you have provided to Investor fairly and accurately reflects your financial condition and is truthful, complete, and not misleading. All such documentation and information regarding the condition of the Property also is truthful, complete and not misleading to the best of your knowledge.

2.10 You warrant that there has been no material change in your financial condition since your application to Investor.

2.11 You warrant you have a continuing obligation to comply with the representations made in this Section 2 and to notify Investor during the Term if any representation you have made ceases to be materially accurate or true.

## 3 Occupancy and Use of Property

3.1 You will enjoy sole right of occupancy of the Property under the Unison HomeOwner Agreement as an owner and not as a tenant or lessee, whether or not Investor has exercised the Option, subject to limited Investor rights of entry and repair following an Event Of Default.

3.2 You will occupy the Property as your principal residence throughout the Term, unless otherwise agreed to by Investor in writing. Occupying the Property as your principal residence means that you live and sleep in the Property for no less than 180 days out of any 365-day period. Investor will not unreasonably withhold consent to a temporary lapse in occupancy if you make arrangements satisfactory to Investor to care for the Property while you are gone.

3.3 You will not (i) use the Property in any way other than as a residential property; (ii) permit the use of the Property for any commercial use, except for a "home office" in compliance with applicable U.S. tax regulations; or (iii) rent all of the Property except with Investor's express written consent.

3.4 You may rent part of the Property without Investor's express written consent. In any termination of the Unison HomeOwner Agreement where Investor determines that an existing rental agreement or tenant who is occupying or has rights to occupy the Property is having a negative impact on the Investor Interest, you, at your expense, will be responsible for terminating such rental agreement or removing such tenant from the Property, or otherwise for compensating Investor for the diminution of the Investor Interest.

## 4 Option Exercise Events

### 4.A Permitted Sale of Property

4.A.1 At any time, you may sell the Property through a "Permitted Sale" (defined below in this Section 4.A). At the time of a Permitted Sale, Investor may exercise its Option to purchase an undivided percentage interest in the Property.

4.A.2 As an alternative to Investor exercising its Option at the time of a Permitted Sale, you may elect to terminate the Option and settle the Unison HomeOwner Agreement by tendering to Investor, through escrow for the Permitted Sale, the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder for the Permitted Sale to effect a full release of the Agreement.

4.A.3 A Permitted Sale means a sale or transfer of the Property to a third-party buyer that adheres to the following requirements or that is otherwise consented to in writing by Investor:

4.A.3.1 You notify Investor in writing of your decision to market, sell or transfer the Property, at least 45 days prior to the proposed closing of such sale or transfer.

4.A.3.2 You timely provide Investor with copies of: inspection report(s), listing agreements, staging agreements, preliminary title reports, preliminary escrow instructions, all offers to purchase the Property, Appraisals, escrow instructions, pest reports, and any other documents relating to the proposed sale or transfer of the Property.

4.A.3.3 If the third-party buyer does not obtain a standard pest report and standard contractor's inspection report in connection with the Property, you must obtain such reports (or, alternatively, Investor may obtain such reports at your expense), and deliver these to Investor at least 14 days prior to the proposed closing of the sale. These reports will be used by Investor to review the terms of the sale and, along with other reports deemed necessary by Investor, for Investor's determination of a Deferred Maintenance Adjustment, if any.

4.A.3.4 The sale is consummated through an appropriate real property escrow account using the services of an escrow holder.

4.A.3.5 Investor has the right to independently appraise the Property before the closing of the sale or transfer.

4.A.3.6 The closing date is scheduled so as to allow Investor sufficient time to: (i) obtain Appraisal(s); and (ii) review relevant documents for a Remodeling Adjustment or Deferred Maintenance Adjustment, if any.

4.A.3.7 The sale or transfer is at arm's length, made on commercially reasonable terms and entered into in good faith.

4.A.3.8 In your sole responsibility, you convey title free and clear of any liens, and satisfy any loans and other obligations secured by liens, including senior liens, on the Property.

4.A.3.9 The sale or transfer does not convey title "subject to" the lien created by the Unison HomeOwner Agreement or any other existing lien or payment obligation on the Property.

4.A.4 If you do not choose to terminate the Option and settle the Unison HomeOwner Agreement, then in furtherance of Investor's exercise of its Option:

4.A.4.1 Investor will deliver to you and to escrow holder a calculation of the Investor Interest, including a statement of any "Unpaid Owner Obligations" (defined in Section 13.8) affecting that calculation.

4.A.4.2 You will deed Investor its percentage interest in the Property through escrow for the Permitted Sale;

4.A.4.3 You and Investor, as co-owners of the Property, will deed the Property to the third-party buyer through escrow; and

4.A.4.4 The escrow holder will close the Permitted Sale, transfer title to the third-party buyer, and liquidate Investor's and your respective percentage interests in the Property.

4.A.5 You will pay all costs in connection with the Permitted Sale of the Property, or in connection with Investor's Option exercise that is followed by a Permitted Sale, in order to liquidate Investor's percentage interest, including "Closing Costs" (defined in the next sentence), but not any closing costs owed by the third-party buyer. "Closing Costs" means costs in connection with any sale of the Property, or in connection with any exercise by Investor of the Option exercise that is followed by a sale of the Property, including, without limitation, recording fees and costs, reconveyance fees, escrow fees, title insurance fees, federal, state, local and documentary transfer taxes and sales commissions.

4.A.6 In the event that there are insufficient amounts in escrow to release all liens senior to Investor's lien, to settle the Investor Interest, and to satisfy Closing Costs and any other expenses required in order to deliver clear title to the Property, you will be solely responsible for covering any shortfall.

4.A.7 If the closing date scheduled for a Permitted Sale falls after the Expiration Date, the Term and the Expiration Date will automatically extend for such reasonable period of time as will permit the closing of such Permitted Sale.

4.A.8 In any proposed sale or transfer by you where Investor determines that the proposed sale price differs materially from the then-estimated market value of the Property or an Appraised Value, including in any:

- "Sale-By-Owner Transaction," which means a sale of the Property conducted either without a public listing of it on the open market, or

where the terms and conditions of the sale have been principally negotiated by you without agency representation, or

- "Intrafamily Transaction," which means a purchase, sale or transfer of the Prop proposed between you and any of your family members by blood or marital relation,

Investor will have the right to take any or all of the following actions: (i) to make an offer in writing to purchase the Property from you on the same terms and conditions as the proposed offer from the other buyer and, if such offer is rejected by you, to obtain a written affidavit under oath from you stating the reasons for the rejection; (ii) to require you and any third-party buyer to execute an affidavit under oath attesting that the relationship between you and the third-party buyer is at arm's length and that the proposed transaction is at a fair market price; and (iii) to require that one or more Appraisals of the Property be conducted in order for the Property value to be established.

4.A.9 Any attempted sale or transfer of the Property that does not comply with the Permitted Sale requirements is an Event of Default and is deemed to imminently prejudice Investor's rights hereunder.

4.A.10 Investor will not be liable to you for any loss relating to any delay or postponement of the closing of a sale resulting from Investor's reasonable inquiries and actions.

**4.B End of the Term**

4.B.1 Investor may exercise its Option to purchase an undivided percentage interest in the Property at the end of the Term, which is the day of the Expiration Date.

4.B.2 Investor will open escrow with an escrow holder selected by Investor at least 90 days but no more than 150 days before the Expiration Date.

4.B.3 Investor and you will conduct a home inspection and Appraisal, at your expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

4.B.4 Investor will deliver to you and to escrow holder a calculation of the Balance Payment, a statement of your "Unpaid Owner Obligations," if any, and a calculation of the Investor Interest.

4.B.5 Investor may exercise the Option on the Expiration Date. You, however, may elect to terminate the Option and settle the Unison HomeOwner Agreement by tendering to Investor, through escrow, the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Agreement.

4.B.6 If you do not terminate the Option and settle the Unison HomeOwner Agreement, Investor may exercise its Option and purchase an undivided percentage interest in the Property, and you will deed Investor its percentage interest in the Property; whereupon you and Investor, as co-owners of the Property, will promptly market and sell the Property in order to liquidate your respective percentage interests, and the Term and the Expiration Date will automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

4.B.7 You will pay all Closing Costs owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by the third-party buyer.

4.B.8 You may sell the Property in a Permitted Sale prior to the close of escrow under this Section 4 provided that such sale closes at least five business days prior to the Expiration Date.

**4.C Death of the Last Surviving Signatory**

4.C.1 Investor may exercise its Option to purchase an undivided percentage interest in the Property at the death of the Last Surviving Signatory. "Last Surviving Signatory" means the last surviving individual who appears as a signatory to the Unison HomeOwner Agreement or any mutually executed written addendum thereto.

4.C.2 Investor has the right to exercise the Option and purchase an undivided percentage interest in the Property as of the death of the Last Surviving Signatory.

4.C.3 You must at all times during the Term, have designated at least one living individual out of your administrators, heirs, or representatives to represent your estate. Your estate will notify Investor immediately in writing of the death of the Last Surviving Signatory.

4.C.4 Upon Investor's receipt of notice of the death of the Last Surviving Signatory, Investor will open escrow with an escrow holder selected by Investor. The closing date selected may be no earlier than 180 days following the date of death of the Last Surviving Signatory unless agreed to by your estate in writing. If Investor determines that your estate has commenced good faith efforts to sell the Property in a Permitted Sale within the 180-day period following the date of death, Investor may extend the closing date for a maximum of two consecutive 90-day periods beyond the 180-day period from death of the Last Surviving Signatory to permit your estate to accomplish the Permitted Sale

4.C.5 Investor and your estate will conduct a home inspection and Appraisal, at your estate's expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

4.C.6 Investor will deliver to your estate and to escrow holder a calculation of the Balance Payment, a statement of your Unpaid Owner Obligations, if any, and a calculation of the Investor Interest.

4.C.7 Investor may exercise the Option. Your estate, however, may elect to terminate the Option and settle the Unison HomeOwner Agreement by tendering to Investor the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Agreement.

4.C.8 If your estate does not terminate the Option and settle the Unison HomeOwner Agreement, Investor may exercise its Option and purchase an undivided percentage interest in the Property, and your estate will deed Investor its percentage interest in the Property. Then Investor and your estate, as co-owners of the Property, will promptly market and sell the Property in order to liquidate their respective percentage interests, and the Term will automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

4.C.9 Your estate will pay all Closing Costs owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by the third-party buyer.

4.C.10 Your estate will administer and protect the Property to preserve Investor's rights following the death of the Last Surviving Signatory, and Investor's rights in the

Property under the Unison HomeOwner Agreement will have priority over expenditures by your estate which are not reasonably necessary to administer and protect the Property.

4.C.11 Your estate may sell the Property in a Permitted Sale within the time period described in Section 4.C.4 above.

4.C.12 All time periods specified in this Section 4.C will run from the actual date of the death of the Last Surviving Signatory. Failure of your estate or any other individual or entity to notify Investor of the death of the Last Surviving Signatory will not toll or suspend the running of the time periods.

**4.D Material and Uncured Event of Default**

4.D.1 Investor may exercise its Option to purchase an undivided percentage interest upon the occurrence of a material, uncured Event of Default by you.

4.D.2 The occurrence of any of the following will constitute an "Event of Default."

4.D.2.1 Failure to Perform. You fail to perform in accordance with any provision of the Unison HomeOwner Agreement, or you take any action to impede the exercise of the Option or infringe on Investor's rights.

4.D.2.2 Misrepresentation. You make any representation to Investor that is false or misleading, including with respect to the condition or value of the Property or in connection with the amount or kind of consideration given to you in any sale or transfer of the Property; or you fail to correct a representation that has become untrue within a reasonable time after learning of the new information regarding the representation.

4.D.2.3 Delinquencies. You become delinquent on any obligation regarding the Property, including on any loans secured by, or with respect to any taxes owed on, the Property.

4.D.2.4 Occupancy. You cease to occupy the Property as your principal residence in accordance with Section 3.2. Alternatively, Non-Owner Occupants of the Property change and you fail to provide to Investor an updated Non-Owner Occupant Disclosure and Acknowledgement.

4.D.2.5 Unauthorized Transfers. You transfer or attempt to transfer the Property other than in accordance with the Unison HomeOwner Agreement.

4.D.2.6 Insurance. You fail to maintain insurance on the Property as prescribed in the Unison HomeOwner Agreement.

4.D.2.7 Other Adverse Acts. Any other occurrence, action or inaction by you which may have a material adverse effect on the Property, the legal ownership of the Property, the value of the Property, or Investor's rights.

**5 Special Termination by You**

5.1 Under the terms of the Unison HomeOwner Agreement, you and Investor have agreed that the Option may not be exercised until the occurrence of an Exercise Event. However, Investor

agrees that after the third anniversary of the Effective Date, you may request what is called a "Special Termination" of the Option by:

5.1.1 Delivering notice to the Investor at least 45 days prior to the proposed Special Termination.

5.1.2 You will provide to Investor copies of all listings for the sale of the Property and all offers for the purchase of the Property, if any.

5.1.3 You and Investor will conduct a home inspection and Appraisal, at your expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

5.1.4 You will open escrow with an escrow holder selected by Investor.

5.1.5 Investor will deliver to you and to escrow holder a calculation of the "Special Termination Price," which is the greater of: (i) the Investor Interest calculated at the time of the Special Termination; (ii) the Initial Payment plus any of your Unpaid Owner Obligations.

5.1.6 If you receive or have pending a written offer for the purchase of the Property, the Investor Interest will be calculated using a Market Value equal to the greater of the then-current Appraised Value of the Property or the gross amount of such purchase offer ("Solicited Sale Value"). If you fail to disclose a Solicited Sale Value that exceeds the Appraised Value used to calculate the Investor Interest at the time of Special Termination or within 90 days after, you will remain liable to Investor for the loss in Investor Interest.

5.1.7 You will deliver the Special Termination Price into escrow together with all Closing Costs, recording expenses or other expenses in connection with the Special Termination.

5.1.8 On escrow's delivery and Investor's acceptance of the Special Termination Price from you, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Unison HomeOwner Agreement.

5.1.9 Investor will retain the right to reject any Special Termination where Investor has not had adequate opportunity to review inspections, pest reports, Appraisals, or other documents, or Investor deems your tender of the Special Termination Price insufficient, inadequate, or untimely.

## 6 Voluntary Release by Investor

6.1 Investor may voluntarily rescind its rights under the Unison HomeOwner Agreement in writing at any time, in which case Investor will effect a full release of the Agreement, and you may keep the Initial Payment and have no further obligation to Investor.

## 7 Investor Rights and Remedies

7.1 In any Event of Default, your rights to cure are those in the Security Instrument and as specified by applicable law.

7.2 In an Event of Default:

7.2.1 Investor may exercise the Option and exercise its rights and remedies under the Security Instrument.

7.2.2 Investor may seek monetary damages against you, including interest, attorney's fees, and costs.

7.2.3 Investor may be irreparably injured and will have the right to specific performance, injunctive relief, or any other equitable relief against you.

7.2.4 Investor may enter the Property to (i) to conduct inspections and Appraisals of the Property; (ii) to prevent waste of the Property; and (iii) for any other purpose reasonable to prevent continuing harm to or diminution in value of the Property.

7.2.5 Investor may make Protective Advances in accordance with Section 13 below.

7.2.6 Investor may demand for you to promptly remedy any material defect or adverse condition on the Property.

7.2.7 If Investor is required to pay money pursuant to a preference claim in a bankruptcy proceeding involving you, then Investor is entitled to assert a claim against you for the same amount.

7.3 Investor is entitled to demand immediate termination of the Agreement, the return of the Initial Payment and any other payments tendered to you, and the payment of the amount, if any, by which the Investor Interest exceeds the Initial Payment, together with any and all attorney's fees and costs incurred by Investor in connection with such termination in an Event of Default related to: (i) fraud, bad faith, or misrepresentation or nondisclosure by you; or (ii) a transfer or sale, or attempted transfer or sale, of the Property by you in violation of the terms of the Unison HomeOwner Agreement.

7.4 In the event of (i) fraud, bad faith, or misrepresentation or nondisclosure by you; (ii) any transfer or sale, or attempted transfer or sale, of the Property by you in violation of the terms of the Unison HomeOwner Agreement, or (iii) any other prolonged, material and uncured default by you under the terms of the Unison HomeOwner Agreement, Investor may reduce the Balance Payment by an amount equal to ten percent (10%) of the Initial Payment.

7.5 In an Event of Default which has resulted in a foreclosure action by a mortgage lender, tax authority or other lien holder (and provided that you have first reasonably exhausted any loss mitigation remedies offered to you by the holder of a senior lien), Investor may offer to you the remedy of an "Orderly Sale," as defined here and immediately below. The Orderly Sale remedy is designed to take advantage of the natural alignment between you and Investor, to prevent the Property from going to foreclosure and becoming a "distressed" property, to protect yours and Investor's interests in the Property, and to prevent a foreclosure event from impacting your credit.

7.6 If you accept Investor's offer of an Orderly Sale, Investor may cure the default through Protective Advances; in exchange you will give Investor the power to exclusively and unilaterally market and sell the Property by, among other things, executing a notarized "Irrevocable Limited Power of Attorney" substantially in the form of Exhibit A to this Covenant.

7.7 The remedies provided in the Agreement are cumulative. A party who asserts a right or seeks a remedy may also assert other rights or seek other remedies.

## 8 Maintenance and Inspection of Property

8.1 You will maintain the Property in good condition, and no worse than its condition as of the Effective Date, subject to normal wear and tear. You will prevent any waste, deterioration or

decrease in value due to the Property's condition. You will periodically perform customary and reasonable repairs.

8.2 You are not entitled to any compensation for ordinary maintenance costs incurred in connection with maintaining the condition and value of the Property.

8.3 During the Term of the Unison HomeOwner Agreement, Investor may:

8.3.1 Conduct reasonable inspections of the interior and exterior of the Property, including inspections conducted with drone photography.

8.3.2 Require you to provide written answers to questions regarding any conditions known to you which may affect the Property or its value.

8.4 You acknowledge that Investor will have no liability to you or to any third party for, and you hold Investor harmless from, any loss or liability in connection with any defect or condition on or affecting the Property, whether known or unknown.

**9 Possible Adjustments to Value**

**9.A Remodeling Adjustment**

9.A.1 You may make modifications to the Property without prior written consent of Investor. All modifications must comply with all applicable laws, including zoning, permitting and the use of licensed tradespeople.

9.A.2 If you believe that any of your modifications materially increased the value of the Property ("Material Modifications"), then you may request that a "Remodeling Adjustment" be made to the Ending Agreed Value of the Property when the Unison HomeOwner Agreement ends.

9.A.3 A modification is a Material Modification under this Agreement only if it affects either the value or the useful life of the Property; in contrast to ordinary and necessary maintenance and repairs, which maintain the condition and value of the Property in its general condition. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for a Remodeling Adjustment.

9.A.4 A "Remodeling Adjustment" is subject to these requirements:

9.A.4.1 You must request a Remodeling Adjustment in writing at least 45 days before any Exercise Event or any event that requires a determination of the Ending Agreed Value.

9.A.4.2 As part of the request, you must specify the Material Modifications for which a Remodeling Adjustment is sought and provide Investor with photographic and supporting evidence of the Material Modifications in accordance with Section 9.A.5 below.

9.A.4.3 An appraiser will determine if your Material Modifications have increased the Ending Agreed Value of the Property. Specifically, the appraiser will provide two values for the Property: the actual value of the Property as-is (which is called the "Actual Value"), and a hypothetical figure representing what the value of the Property would be if it had not been materially modified (which is called the "Hypothetical Value"). If the Appraisal is conducted in connection

with a Permitted Sale, the appraiser will assume that the agreed sale price between you and third-party buyer in the Permitted Sale is the Actual Value of the Property. The difference between the Actual Value and the Hypothetical Value is the value of the Remodeling Adjustment. The appraiser will be instructed to consider the age, depreciation and potential functional obsolescence of Material Modifications, and not to consider the cost of the Material Modifications.

9.A.5 You will maintain, and provide to appraiser and Investor upon any request for a Remodeling Adjustment, photographic and other physical documentation of the Property before completion of the Material Modifications, which will be sufficient in scope, clarity, number and detail to permit the appraiser to compare the Actual Value to the Hypothetical Value, in appraiser's discretion.

9.A.6 No Remodeling Adjustment will be given to the extent (i) the Material Modifications are determined by Appraisal to have become functionally obsolete; (ii) any modifications result in a violation of this Agreement; or (iii) the photographic and other supporting evidence provided by you is not of sufficient quality to support the appraiser's calculation.

9.A.7 No Remodeling Adjustment will be made if the Unison HomeOwner Agreement is terminated at any time prior to the third anniversary of the Effective Date.

9.A.8 If the Appraisal valuation process described above determines that the Actual Value minus the Hypothetical Value yields a negative number, Investor may apply any such decrease in value as a "Negative Remodeling Adjustment" when calculating the Ending Agreed Value, at any time during the Term. If Investor believes the process described above would likely result in a Negative Remodeling Adjustment, then Investor may obtain such Appraisal.

9.A.9 Provided all of the conditions of this Section 9.A are met, Investor will apply a Remodeling Adjustment in its calculation of the Investor Interest by reducing the Ending Agreed Value by the amount of the Remodeling Adjustment.

**9.B Deferred Maintenance Adjustment**

9.B.1 If Investor determines that either (i) you have breached your duties of maintaining and repairing the Property; or (ii) the Ending Agreed Value is negatively affected as the direct result of a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, Investor will have the right in consultation with independent appraisers, third party experts and inspectors to make a commercially reasonable estimate of the dollar amount of such deferred maintenance and to apply such dollar amount as a "Deferred Maintenance Adjustment" when calculating the Ending Agreed Value.

9.B.2 Investor may also apply a Deferred Maintenance Adjustment when determining the Ending Agreed Value of the Property where: (i) as of the Effective Date, Investor identified and expressly reserved for a Deferred Maintenance Adjustment significant material defects or conditions in or on the Property which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the Property improvements or Property value, and you failed to correct such defects or conditions; or (ii) if you knew or had reason to know of such a defect or condition at the time of the Property Purchase or during the Term of the Unison HomeOwner Agreement, but failed or neglected to disclose it to Investor.

9.1

**10 Appraisal and Appraisal Expenses**

10.1 An "Appraised Value" is an independent third-party "Appraisal" (as defined in this Section), or valuation, of the Property made in connection with the Unison HomeOwner Agreement. All Appraisals will be conducted by an appraiser approved in advance by Investor and unaffiliated with either you or Investor, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and related regulations, and any applicable state laws, as of the date of the Appraisal, and in compliance with the Uniform Standards of Professional Appraisal Practice.

10.2 You will cooperate with the appraiser by granting full access to the Property and making available any relevant documents and information in your possession pertaining to the Property.

10.3 If either party concludes that an Appraisal contains a material omission or material error of fact, either party may, no later than 10 days after receipt of the Appraisal, request a reconsideration of the Appraisal, at the party's own cost.

10.4 As allowed by applicable law, you will pay all fees and expenses owed to third parties (but excluding Attorneys' Fees) in connection with an appraisal or other valuation of the Property ("Appraisal Expenses") associated with the first Appraisal obtained in connection with: (i) initial valuation of the Property prior to execution of the Unison HomeOwner Agreement, unless paid by Investor; (ii) any proposed or actual sale; (iii) any Option exercise by Investor; (iv) any Special Termination; (v) any allocation of insurance or condemnation proceeds; (vi) any determination of an Ending Agreed Value; (vii) any determination of a Remodeling Adjustment or Deferred Maintenance Adjustment ; and (viii) any new loan secured by the Property agreed to in writing by Investor after the Effective Date (an "Approved Subsequent Loan").

10.5 If there is more than one Appraisal of the Property obtained in connection with any of the events described in Section 10.4 above, the Appraisal Expense will be paid by the party who requested the additional Appraisal, or if both parties agree that an additional Appraisal should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them out of the party's funds from escrow, as allowed by applicable law.

10.6 All Appraisals must conform to Investor's most current Appraisal requirements.

**11 Debt Limits, Property Obligations and Loans**

11.1 You may not at any time increase the total principal balance of loans secured by liens on the Property (including the unused portion of any committed credit line) to exceed the Maximum Authorized Debt specified in the Unison HomeOwner Option Agreement.

11.2 The Maximum Authorized Debt limitation applies both to Approved Existing Loans and Approved Subsequent Loans.

11.3 You will keep the Property free of any liens, title exceptions, and easements except for: liens securing Approved Existing Loans or Approved Subsequent Loans and Permitted Encumbrances.

11.4 If there is a default under any loan or other obligation secured by a lien on the Property, you will take immediate action necessary to: (i) cure the default, (ii) terminate any foreclosure or enforcement action, (iii) satisfy the secured obligation, and/or (iv) remove or release such lien from the Property.

11.5 If during the Term of the Unison HomeOwner Agreement, you want an Approved Subsequent Loan, you must:

11.5.1 Provide to Investor all loan documentation related to the proposed loan no later than 3 business days prior to the proposed close of the loan.

11.5.2 Cooperate with Investor to obtain an Appraisal of the Property, with such Appraisal to be completed no later than 3 business days prior to the proposed close of the loan.

11.5.3 Ensure that copies of all loan documents and all documents recorded against the Property are delivered to Investor immediately following the closing of the loan.

11.5.4 Obtain Investor's written consent to the loan. Investor will not unreasonably withhold consent if:

(a) The Appraised Value of the Property is greater than or equal to the Original Agreed Value and the then-current principal balance of all loans secured by liens on the Property plus the amount of the proposed loan is less than or equal to the Maximum Authorized Debt.

(b) The Appraised Value of the Property is less than the Original Agreed Value, the proposed loan is being used solely to refinance existing senior debt secured by the Property, and the amount of the proposed loan is less than or equal to the then-current principal balance of all loans secured by the Property, plus actual and reasonable refinancing costs.

11.6 Investor will subordinate the priority of its rights under the Unison HomeOwner Agreement to the lien of any lender that extends to Owner an Approved Subsequent Loan, provided that: (i) the Approved Subsequent Loan satisfies the requirements of this Section 11; and (ii) any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor.

11.7 Investor will not consent to any lien on the Property that could materially impair Investor's rights, including, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

11.8 Investor is not liable for any loans obtained by you.

11.9 Investor makes no representations regarding the availability or terms of any loan that you may seek during the Term of the Unison HomeOwner Agreement, and will have no liability to you as a result of the unavailability or unfavorable terms of any such loan.

## 12 Taxes and Assessments

12.1 You will promptly pay all taxes and assessments accruing on the Property and will not apply for any deferrals. You will provide Investor proof of payment upon request.

12.2 You are entitled to the full benefit of any tax advantages arising in relation to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by

you. Investor does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to you in connection with the Property or the Unison HomeOwner Agreement.

**13 Protective Advances**

13.1 If you fail to protect the Property and Investor's rights, Investor may make "Protective Advances," as defined in this Section, as Investor deems appropriate.

13.2 Investor will provide 10 days' written notice to you, to correct your default, such as:

13.2.1 The placement of insurance; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property;

13.2.2 The making of necessary repairs;

13.2.3 The cure of any defaulted loans; or

13.2.4 The removal of a receiver appointed for the Property.

13.3 If, after the 10 days' written notice, you have not cured the default, Investor may make the payments itself. All such payments by Investor (including attorneys' fees incurred in litigation or arbitration with parties other than you) are deemed Protective Advances.

13.4 Prior notice from Investor is not required if the Unison HomeOwner Agreement expressly so provides, or when Investor determines that prompt action is necessary to protect the Property and Investor's rights.

13.5 Investor incurs no liability for its election not to take any action authorized under this Section 13.

13.6 Investor may demand prompt reimbursement for any Protective Advances. You must reimburse Investor no later than 10 days after demand. Protective Advances incur interest at the rate of 1.5% per month, subject to applicable law, from the date of demand until paid in full. These charges are intended to be a reasonable liquidated estimate of those sums which Investor could be obliged to obtain and expend in the event appropriate corrective action(s) are not taken to protect the Property or Investor's rights, which sums and costs are not readily ascertainable, and will be difficult to predict or calculate.

13.7 You consent to Investor's unilateral authority to determine the appropriateness or necessity of any Protective Advances to you.

13.8 "Protective Advances," to the extent they are not reimbursed to Investor by you, become a component of what are called "Unpaid Owner Obligations." "Unpaid Owner Obligations," in total, are the sum of unreimbursed Protective Advances; unpaid interest, fees and other charges associated with Protective Advances; as well as any other amounts expended by Investor to protect its rights or the value of the Property in an Event of Default.

**14 Insurance Coverage**

14.1 You must maintain at your expense:

14.1.1 Insurance on the Property against fire and other hazards included in the special form (HO-3) policy (and any successor forms);

14.1.2 Hazard insurance, including flood hazard, and any other insurance Investor may reasonably require and which is common for similar properties in similar

locations, in an amount equal to the current replacement cost of the improvements on the Property, which amount will be increased not less frequently than annually as the replacement cost of the improvements increases.

14.1.3 Liability insurance on the Property against such risks and in such amounts as are reasonable for similar properties in similar locations.

14.2 You authorize Investor to communicate with all insurance companies to ensure the maintenance of policies, the coverage, and the reimbursement of losses.

14.3 Investor must be named as an additional named insured under all hazard and liability insurance policies obtained by you related to the Property.

14.4 You may obtain insurance from any insurance company reasonably acceptable to Investor.

14.5 You must provide to Investor copies of all insurance policies related to the Property when the insurance is obtained. You must provide Investor with proof of coverage upon request.

14.6 If you fail to maintain or obtain the insurance coverage required by this Section 14, Investor may obtain such coverage on the Property. Any such expenses paid by Investor are Protective Advances.

**15 Distribution of Insurance Proceeds for Losses**

15.1 Subject to your obligations and the requirements in connection with any senior lien, insurance for losses will be distributed as described in this Section 15.

15.2 You and Investor will cooperate in the pursuit, settlement, and adjustment of any losses under any insurance policies.

15.3 In the event of damage to the Property where restoration or repair is economically feasible, subject to your obligations in connection with senior liens, the proceeds must promptly be applied to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, further subject to:

15.3.1 Investor has the right to approve any restoration or repair plans, including the contractors or subcontractors used and the costs associated with the restoration or repair.

15.3.2 Investor has the right to release insurance proceeds to the individuals or entities performing the repair and restoration work in one or more progress payments as the work is completed.

15.3.3 Unless required by law, Investor is not required to pay you any interest or earnings on insurance proceeds.

15.3.4 You are responsible for ensuring that any repair or restoration work is completed in a cost-effective manner that in no way impairs the structural integrity, habitability or value of the Property.

15.3.5 You are responsible for obtaining any governmental approvals or permits that are required for such repair or restoration work.

15.3.6 Investor has no obligation to pay any amount of the restoration or repair of the Property even if the insurance proceeds are insufficient to complete the restoration or repair. You are responsible for any shortfall.

15.4 If restoration or repair is not economically feasible, all insurance proceeds will be allocated in the following order:

15.4.1 To payment of reasonable expenses incurred by you or Investor in collecting and contesting with the insurers the payments under the relevant insurance policies, including attorney's fees that have been approved by Investor;

15.4.2 To payment of all senior liens that have priority over the Unison HomeOwner Agreement;

15.4.3 To Investor, in an amount equivalent to the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the destruction or damage occurred; and

15.4.4 To you, the balance of the proceeds.

15.5 In the event you fail to maintain insurance in amounts required by Investor, or any insurance claim is denied due to your action or inaction, resulting damages may be difficult to ascertain. In the event of loss to Investor resulting directly from your failure to maintain insurance or obtain a claim, you and Investor agree that Investor is entitled to what are called "Special damages for Failure to Insure." The Special Damages for Failure to Insure are calculated as the amount of the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the destruction or damage occurred, but without credit of the Balance Payment to you.

**16 Condemnation of Property**

16.1 If the Property is condemned in whole or in part during the Term, all condemnation proceeds will be distributed as follows:

16.1.1 To repay any reasonable costs and expenses incurred by you or Investor in collecting and contesting the condemnation proceeds, including attorney's fees that have been approved by Investor;

16.1.2 To payments for extinguishing all liens that have priority over the Unison HomeOwner Agreement;

16.1.3 To Investor, to the extent of the Investor Interest;

16.1.4 To you, the balance of the proceeds.

16.2 In the case of a partial condemnation: (i) Investor retains its rights with respect to any Property that has not been condemned; and (ii) after distribution of the proceeds of the partial condemnation, for all remaining calculations to be made under the Unison HomeOwner Agreement, the Balance Payment will be reduced by an amount equal to the condemnation proceeds less any amounts paid under Section 16.1.1 and 16.1.2, multiplied by the Investor Percentage.

**17 Multiple Owners**

17.1 If you are more than one individual:

17.1.1 The Unison HomeOwner Agreement must be signed by each of you;

17.1.2 All of you are jointly and severally liable for liabilities and obligations under the Unison HomeOwner Agreement;

17.1.3 Notice required to be given to you is adequate if given to any of you; and

17.1.4 Investor may treat any notice received from any one of you as notice from all of you.

**18 Revocable Trusts**

18.1 If you are the trustee of a Revocable Trust:

18.1.1 All trustees and all trustors must be disclosed to Investor and must sign the Unison HomeOwner Agreement;

18.1.2 All rights and powers specified for, and all actions required of, you in the Agreement that are exercised by a trustee are deemed approved and exercised by all trustees unanimously;

18.1.3 All trustees and all trustors, in their capacities as individuals, are jointly and severally liable with you for Owner's liabilities and obligations under the Agreement;

18.1.4 All representations and warranties by you in the Agreement are made by all trustees on behalf of the Revocable Trust and by all trustees and all trustors in their capacities as individuals;

18.1.5 Notice required to be given to you is adequate if given to any of the trustees; and

18.1.6 Investor may treat any notice received from any trustee as notice from all trustees and from you.

**19 Miscellaneous Provisions**

19.1 Notices. You will immediately provide Investor with written notice of any event that may have a material effect upon the Property, the value of the Property, or Investor's ability to exercise any of Investor's rights.

19.1.1 All required notices must be in writing and will be considered given when delivered (1) personally, (2) to the mailing address set forth in the Option by overnight delivery by a nationally recognized courier service, or (3) by email to the email address specified for you in the Option.

19.1.2 The following notices are not given by you to Investor until written confirmation of receipt is made by Investor to you: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of your death; and notices of the commencement of legal or other action concerning the Property, or of your bankruptcy proceedings.

19.2 Indemnification. You hereby agree to indemnify and hold Investor harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, attorneys' fees and costs) arising out of or relating to: (i) a breach of any of your covenants, representations or warranties under the Unison HomeOwner Agreement; (ii) any act or omission by you or your agents; or (iii) the Property.

19.3 Right to Disclose Certain Information. Subject to applicable laws, Investor may share certain personal and financial information about the Unison HomeOwner Agreement with affiliates, subsidiaries, investors, assignees and those with which it intends to conduct business. This information includes, without limitation, the address and general location of the Property,

Appraisal reports and other valuations of the Property, and the financial terms of the Unison HomeOwner Agreement.

19.4 Right to Obtain Certain Information. Subject to applicable laws, Investor may obtain certain personal and financial information as necessary to maintain the Agreement, including credit report histories, or current balances and payoff amounts of loans secured by the Property.

19.5 Relationship. Investor shall not be deemed a partner, joint venturer, trustee, agent, representative, lender or fiduciary with, or of, you. You expressly waive any claims against any of Investor's agents, assignees, affiliates, employees, directors or funding sources.

19.6 Delegation of Duties. Investor may execute any of its duties under the Unison HomeOwner Agreement by or through agents.

19.7 Successors and Assignees. If the Agreement is properly assigned, then you and Investor agree it will bind and benefit your respective heirs, successors, and assigns.

19.7.1 Investor may assign Investor's right and title to, and interest in, the Unison HomeOwner Agreement at any time and to any individual or entity without prior notice to or consent of you.

19.7.2 You agree to cooperate as necessary upon Investor's request to ensure assignee's interest in the Property.

19.7.3 Absent Investor's prior written consent you may not assign or otherwise transfer the Unison HomeOwner Agreement.

19.8 Survival. The indemnification provisions, obligations to pay any of your Unpaid Obligations, obligations to pay Closing Costs, all covenants, representations and warranties of you, and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation, provisions prescribing monetary remedies, fees, costs and expenses owed by you in connection with any Event of Default, will survive for three years after the end of the Unison HomeOwner Agreement.

19.9 Attorneys' Fees. If a dispute arises out of the Unison HomeOwner Agreement, then the prevailing party will be entitled to reasonable attorney fees and costs.

19.10 Applicable Law and Venue. The Unison HomeOwner Agreement will be governed by Indiana law. Any lawsuit or arbitration arising directly or indirectly out of the Agreement will be contested in the venue where the Property is located.

19.11 Correction of Document. The parties agree to correct any error or inaccuracy in the Unison HomeOwner Agreement, to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into and to replace any missing or misplaced documentation, or to confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation.

19.12 Severability. Each provision of the Unison HomeOwner Agreement must be interpreted in a way that is valid under applicable law. If any provision is held invalid or unenforceable, such adjudication shall not affect, impair, invalidate, or nullify the remainder of the Agreement, but shall only affect that provision.

19.13 Waivers. A waiver by Investor of a breach of any term in the Unison HomeOwner Agreement by you will not be considered (i) waiver of a further breach of the same term, or (ii) a waiver of a breach of any other term, or (iii) a waiver of Investor's right to declare an immediate or subsequent default.

19.14 Injunction. Notwithstanding anything to the contrary in the Unison HomeOwner Agreement or otherwise, if Investor is stayed or enjoined from enforcing any of Investor's rights under the Unison HomeOwner Agreement, then any deadline or notice period prescribed in that Agreement is automatically stayed for the duration of such stay, injunction or legal prohibition.

19.15 Entire Agreement. The Unison HomeOwner Agreement and its attachments contain the entire understanding between the parties.

19.16 Titles and Summary. The Titles and Summary are inserted in the Agreement for reference purposes only and must not be used to interpret the Agreement.

19.17 Counterparts. The Unison HomeOwner Agreement and its attachments may be executed in counterparts, each of which shall be deemed an original, but all of which together constitute one and the same Agreement.

19.18 Waiver of Jury Trial. To the fullest extent permitted by law, you and Investor hereby voluntarily and irrevocably waive trial by jury in any litigation or proceeding related to the Unison HomeOwner Agreement.

19.19 Covenants To Run With Land. The Option, Covenant, and the other provisions of the Unison HomeOwner Agreement are deemed to be covenants running with the land as reflected in the Recorded Memorandum. The interpretation of the phrase "covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

## 20 Arbitration

20.1 You and Investor agree that either party may, at its sole election, choose to submit to neutral, binding arbitration pursuant to this Section 20 (the "Arbitration Provision") rather than court action the following controversies (which will be called "Claims"):

> any past, present, or future claim, dispute, or controversy (including matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise) whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise, between you and Investor or Investor's employees, directors, agents, successors or assigns, which arises out of or relates to the Unison HomeOwner Agreement, including any dispute regarding an Appraised Value of the Property, Remodeling Adjustment or Deferred Maintenance Adjustment, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)

20.2 IF A DISPUTE IS ARBITRATED, YOU GIVE UP THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST INVESTOR INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND INVESTOR WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

20.3 The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable. The interpretation and scope of this Arbitration Provision, and the arbitrability of any Claim shall be resolved by neutral, binding arbitration and not by a court action. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and enforceable.

20.4 Arbitration shall be initiated with the American Arbitration Association (the "AAA") or the Judicial Arbitration and Mediations Service ("JAMS"). The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or applicable law. Neither you nor Investor waive the right to arbitrate by using self-help remedies (such as non-judicial foreclosure), or by filing a judicial action to related to the Property (whether to recover a deficiency balance, or for individual injunctive relief).

20.5 The arbitration fees will be shared equally by you and Investor. You and Investor shall each pay their own attorneys' fees incurred in connection with such arbitration, except as otherwise provided by law. If a statute gives the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein. Any award by the arbitrator shall be in writing and will be final and binding on all parties. Any court having jurisdiction may enter or confirm judgment on the arbitrator's award.

20.6 This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act ("FAA"). The arbitrator will apply substantive law consistent with the FAA and the applicable statute of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator shall take steps to reasonably protect confidential information during and after the completion of the arbitration.

(remainder of page intentionally blank)

IN WITNESS, WHEREOF, intending to be legally bound, each of you have executed this Unison HomeOwner Covenant Agreement:

**You:**

Sign: ______________________________
Le Yang

Date: 2/17/2022

**Schedule A to the Covenant: Index of Defined Terms**

This Index identifies where you can find the meaning of every defined term in the Unison HomeOwner Agreement.

**"Actual Value"** is defined in this Covenant § 9.A.4.3.

**"Agreement"** is an abbreviation for the Unison HomeOwner Agreement, which itself is defined in the Option Agreement § 1.2, and which you are executing today.

**"Appraisal"** is defined in this Covenant § 10.1.

**"Appraisal Expenses"** is defined in this Covenant § 10.4

**"Appraised Value"** is defined in this Covenant § 10.1.

**"Approved Existing Loan"** is defined in this Covenant § 2.1.

**"Approved Subsequent Loan"** is defined in this Covenant § 10.4.

**"Arbitration Provision"** is defined in this Covenant § 20.1.

**"Balance Payment"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 3.1 of that contract.

**"Certification of Non-Owner Occupants"** is defined in this Covenant § 2.8.

**"Claim"** is defined in this Covenant § 20.1.

**"Closing Costs"** is defined in this Covenant § 4.A5.

**"Covenant"** is an abbreviation for the "Unison HomeOwner Covenant Agreement" that you are executing today.

**"Deferred Maintenance Adjustment"** is defined in this Covenant § 9.B.1.

.

**"Effective Date"** is the date specified in the table at the end of the Option Agreement § 1.

**"Effective Sale Price"** is defined in the Table that defines "Market Value" in Schedule B to this Covenant.

**"Ending Agreed Value"** is defined in Schedule B to this Covenant.

**"Event of Default"** is defined in this Covenant § 4.D.2.

**"Exercise Event"** is summarily defined in the Option Agreement § 6, and each particular Exercise Event is defined in this Covenant §§ 4.A, 4.B, 4.C and 4.D, respectively.

**"Expiration Date"** means the date specified in the table at the end of the Option Agreement § 1.

**"Hypothetical Value"** is defined in this Covenant § 9.A.4.3.

**"Initial Payment"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 2.1 of that contract.

**"Intrafamily Transaction"** is defined in this Covenant § 4.A.8.

**"Investor"** is defined in the Option Agreement § 1.1 and in this Covenant § 1.1.

**"Investor Interest"** is defined in the Option Agreement § 7.

**"Investor Percentage"** means the Percentage specified in the table at the end of the Option Agreement § 1, and is further described in § 3.1 of that contract.

**"Irrevocable Limited Power of Attorney"** is defined in this Covenant § 7.6, and may be found as Exhibit A to this Covenant.

**"Last Surviving Signatory"** is defined in this Covenant § 4.C.1.

**"Market Value"** is defined in the table in Schedule B to this Covenant.

**"Material Modification"** is defined in this Covenant §§ 9.A.2 and 9.A.3.

**"Maximum Authorized Debt"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 9.1 of that contract.

**"Negative Remodeling Adjustment"** is defined in this Covenant § 9.A.8.

**"Non-Owner Occupant"** is defined in this Covenant § 2.8.

**"Non-Owner Occupant Disclosure and Acknowledgment"** is defined in this Covenant § 2.8 and may be found as Exhibit B to this Covenant.

**"Option"** is defined in the Option Agreement § 3.1.

**"Option Agreement"** is an abbreviation for the "Unison HomeOwner Option Agreement" that you are executing today.

**"Orderly Sale"** is defined in this Covenant §§ 7.5—7.6.

**"Original Agreed Value"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 5.1 of that contract.

**"Permitted Encumbrance"** is defined in this Covenant § 2.1.

**"Permitted Sale"** is defined in this Covenant § 4.A.

**"Property"** means the Property identified in the table at the end of the Option Agreement § 1, and is further described in Exhibit A to that contract.

**"Property Purchase"** is defined in this Covenant § 2.9.

**"Protective Advances"** is defined in this Covenant § 13.

**"Recorded Memorandum"** is an abbreviation for the "Unison HomeOwner Recorded Memorandum" that you are executing today.

**"Reasonable Value"** is defined in the Table of Market Value at Schedule B to this Covenant, for the "Payment of insurance proceeds" event.

**"Remodeling Adjustment"** is defined this Covenant §§ 9.A.2—9.A.4.

**"Revocable Trust"** is defined in this Covenant § 2.2.

**"Revocable Trust Rider"** is defined in this Covenant § 2.2 and may be found as a rider to the Security Instrument.

**"Sale-By-Owner Transaction"** is defined in this Covenant § 4.A.8.

© 2020, **UNISON**

**"Security Instrument"** is an abbreviation for the "Unison HomeOwner Security Instrument" that you are executing today.

**"Solicited Sale Value"** is defined in this Covenant § 5.1.6.

**"Special Damages For Failure To Insure"** is defined in this Covenant § 15.5.

**"Special Termination"** is defined in the Option Agreement § 8.1 and further defined in this Covenant § 5.1.

**"Special Termination Price"** is defined in the Option Agreement § 8.1 and again in this Covenant § 5.1.5.

**"Term"** means 30 years, as specified in the table at the end of the Option Agreement § 1; it is further described in § 4.1 of that contract.

**"Unpaid Owner Obligations"** are defined in this Covenant § 13.8.

**"You"** is defined in the Option Agreement § 1.1.

**Schedule B to the Covenant: "Ending Agreed Value" and "Market Value"**

This Schedule provides the definitions of **"Ending Agreed Value"** and a term used in that definition: **"Market Value."**

**"Ending Agreed Value"** means:

Market Value (determined per the table below)
*minus* any Remodeling Adjustment*
*plus* any Deferred Maintenance Adjustment.

*If there is a Negative Remodeling Adjustment, then the absolute value of that number is added rather than subtracted.

**"Market Value"** is determined according to the following table, which indicates that Market Value depends on the Event that triggers the need for the valuation. The first column of the table identifies the Section of the Covenant where the Event is described.

<table>
<tr><th>Covenant Section</th><th>Event</th><th>Market Value Equals</th></tr>
<tr><td>§ 4.A</td><td>A Permitted Sale before the three-year anniversary of the Effective Date</td><td>The greater of (i) the Effective Sale Price or (ii) the Original Agreed Value.<br>The "Effective Sale Price" is the monetary amount for which the Property is to be sold by you or Investor, as applicable, to a third-party buyer, as set forth by the escrow holder. The Effective Sale Price does not include any deduction for any: (a) Closing Costs; (b) payments to extinguish liens on the Property; (c) outstanding taxes; (d) Appraisal Expenses; and/or (e) amounts payable to Investor.</td></tr>
<tr><td>§ 4.A</td><td>A Permitted Sale after that three-year period</td><td>The Effective Sale Price</td></tr>
<tr><td>§ 4.A</td><td>A Property sale by you that is not a Permitted Sale, including a Sale-By-Owner, and an Intrafamily Sale</td><td>In Investor's discretion: either (i) the Effective Sale Price, or (ii) the Appraised Value.</td></tr>
<tr><td>§ 4.B</td><td>End of the Term of the Agreement</td><td rowspan="2">The Appraised Value.</td></tr>
<tr><td>§ 4.C</td><td>Death of the Last Surviving Signatory</td></tr>
<tr><td>§ 4.D</td><td>Following any material and uncured Event of Default</td><td>The greatest of: (i) the Original Agreed Value, (ii) the highest Appraised Value after the date of the first Event of Default, or (iii) the Effective Sale Price.</td></tr>
<tr><td>§ 5</td><td>Special Termination</td><td>The greater of: (i) the Appraised Value at the time of Special Termination, or (ii) the Solicited Sale Value.</td></tr>
</table>

© 2020, **UNISON**

FRX-408954

| Covenant Section | Event | Market Value Equals |
|---|---|---|
| § 14 | Payment of insurance proceeds | The Appraised Value as it existed immediately prior to the destruction or damage.<br><br>Or, if valuing the Property by Appraisal is not possible due to the destruction or damage, the Property value immediately prior to the destruction or damage as determined by some other reasonable process (the "Reasonable Value") based on an expert third-party opinion obtained by Investor. |
| § 16 | Payment of condemnation proceeds | The greater of (i) the Appraised Value as it existed immediately prior to the condemnation; or (ii) the condemnation proceeds minus payments for reasonable costs and expenses and for extinguishing senior liens as described in Covenant § 16.1.<br><br>Or, if valuing the Property by Appraisal is not possible due to the condemnation, the Reasonable Value (defined in the row above) immediately prior to the condemnation. |

© 2020, **UNISON**

unison

## NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number: FRX-408954

This Notice and Acknowledgement Form (**"Form"**) contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property (**"Property"**) subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as **"Non-Owner Occupant(s)"**). Please READ IT CAREFULLY. This Form must be signed by all HomeOwners entering into and executing a Unison HomeOwner Agreement (**"Unison Signatory(ies)"**). Any owner executing a Unison HomeOwner Agreement (**"Owner"**) is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. (**"Unison"**) as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement, may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest (**"Investor Percentage"**) in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.

[X] I represent and warrant that there are no Non-Owner Occupants living in my Property.

Acknowledged and agreed:

**Owner(s):**

Sign: [signature]
Le Yang

Date: 2/17/2022

[ ] I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

**Owner(s):**

Sign: ____________________
Le Yang

Date:
____________________

| | |
|---|---|
| Non-Owner Occupant 1:<br><br>Print name: ____________________<br><br>Relation to Applicant: ____________________ | Non-Owner Occupant 2:<br><br>Print name: ____________________<br><br>Relation to Applicant: ____________________ |
| Non-Owner Occupant 3:<br><br>Print name: ____________________<br><br>Relation to Applicant: ____________________ | Non-Owner Occupant 4:<br><br>Print name: ____________________<br><br>Relation to Applicant: ____________________ |

unison

# CANCELLATION NOTICE

Homeowner(s): Le Yang
Property Address: 705 Carlin Ct, Carmel, IN 46032
Unison ID Number: FRX-408954
Agreement Documents Provided: February 16, 2022

You are entering into a **Unison HomeOwner Agreement**, which will result in a lien and security interest on your home. You may cancel this transaction by notifying us in writing by the Cancellation Deadline below, **which is 3 business days from the day you receive your Agreement documents**, following the instructions in this Notice.

**CANCELLATION DEADLINE**: This Cancellation Notice must be *delivered* not later than 11:59 p.m Pacific time on

February 19, 2022 .

**HOW TO CANCEL**: To be effective, cancellation must be in writing and signed by you on this Cancellation Notice form. The form must be actually delivered at the fax number or email address below by the Cancellation Deadline.

Time is of the essence. Telephonic and other attempted cancellations, cancellations attempted not using this Cancellation Notice form, or cancellations that are delivered after the Cancellation Deadline will not be honored.

**BY FAX: (800) 775-8701**
**Attn: Acquisitions Department**

**BY EMAIL:**
bryan.luong@unisonim.com

**SIGN ONLY IF YOU ELECT TO CANCEL**

**I WISH TO CANCEL**

Sign: ______________________
Le Yang

Date: ______________________

**I/WE ACKNOWLEDGE RECEIPT OF CANCELLATION NOTICE**

Sign: [signature]
Le Yang

Date: 2/17/2022