**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No: 23-00075-RLM-11 |
| LE YANG, | ) |
| | ) |
| Debtor. | ) |
| | ) |

**UNISON MIDGARD HOLDINGS, LLC'S OBJECTON TO**
**DEBTOR'S MOTION TO REJECT CONTRACT REGARDING AMS RUN PROPERTY**

Unison Midgard Holdings, LLC ("Unison Midgard"), by counsel, objects to Debtor Le Yang's ("Yang") Motion to Reject Contract Regarding Ams Run Property (ECF No. 97). In support of its objection, Unison states as follows:

## Introduction

1. In June 2022, Unison Agreement Corp. ("Unison") purchased from Yang an option to acquire an undivided partial interest in Yang's residential real property at an agreed-upon price for an initial investment payment of $180,915, and subsequently assigned its rights to Unison Midgard. The option is secured by a mortgage recorded against the property. Under the option contract, Unison Midgard may exercise its option for a period of thirty-years upon certain triggering exercise events or let the option lapse. If the property value has increased when Unison Midgard is permitted to exercise its option, then the effective result is that Unison Midgard and Yang share in the appreciation. If the property value has decreased, then Unison Midgard similarly shares in the downside up to the full amount of the initial investment payment. And if the property value drops below a certain threshold amount, Unison Midgard will have no economic reason to exercise its

1

option, in which case Yang would simply keep the $180,915 he received. Unison Midgard has not exercised its option to date.

2.      Yang moves to reject the option contract under Section 365, claiming it is an executory contract. But that claim fails because there were no material unperformed obligations under the contract as of the petition date, and courts have held that an unexercised option is not executory and cannot be rejected under Section 365. At the same time, Yang cannot avoid the mortgage securing Unison Midgard's option because he was not insolvent when he sold the secured option right to Unison and he received reasonably equivalent value in exchange for the mortgage. Accordingly, Yang's Motion should be denied.

## Background

### I.     The Unison HomeOwner Program

3.      Unison originates home-equity sharing agreements under the name Unison HomeOwner. The Unison HomeOwner Program ("Program") allows current homeowners to access established equity in their home without added debt, interest or monthly payments, and use the cash for any purpose they wish, e.g., to eliminate debt, remodel the home, pay school tuition, or any other purpose.

4.      Rather than a loan or other form of debt, the Program is an investment by Unison in the form of a real estate option contract (an "Option Agreement"), which effectively allows Unison to share in the property's change in value between the date of the agreement and the date of certain subsequent option exercise events. Unison pays the customer for the future right to purchase an undivided interest in the customer's property

at an agreed upon price (the "Purchase Price"). The total purchase price is based on the property's value at the inception of the contract (the "Original Agreed Value").

5. The total purchase price is paid to the customer in two payments. The first payment to the customer (the "Original Investment Price") is a tender of cash between 5% and 17.5% of the value of the property, in exchange for a purchase option right. The option provides the right to purchase an undivided interest in the property (the "Investor Percentage"), which can range from 20% to 70%. The second payment owed to the customer equals the balance of the agreed upon price of Unison's interest in the property (the "Purchase Price Balance") and is tendered or settled if and when Unison might exercise its option. Unison is not required to exercise its option and would have no economic reason for doing so if for any reason (e.g., a recession) the value of the property dropped steeply.

6. Unison can only exercise its purchase option upon defined events: (1) sale of the property; (2) expiration of the option's thirty-year term; (3) death of the original owners; or (4) a material and uncured default (e.g., property maintenance or keeping secured loans current).

7. The customer, however, may elect to terminate—or "buy out"—Unison's option right after a minimum of three years (or in some cases, five years depending on the agreement). The customer may pay Unison the then-current value of Unison's percentage interest in the property based on the "Ending Agreed Value" of the property. In the case of such a termination unconnected to an option exercise event, the Ending Agreed Value is determined by a neutral, third-party appraisal. When an option exercise event occurs, the customer may also settle the option through a buyout (for example, during a property sale

3

through a cash payment from proceeds of the sale equal to the value of Unison's percentage interest in the property).

8. Whether Unison ultimately decides to exercise its option and profits from the investment is entirely dependent on the market change of the value of the property. If the property value has increased when Unison is permitted to exercise its option, then the effective result is that Unison and the customer both share in the appreciation. If the property value has dropped in some small amount, Unison might still decide to exercise its option but would similarly share in the downside up to the full amount of its investment payment. Indeed, if the property depreciates by a certain amount (depending on the Investor Percentage), Unison will have no economic reason to even exercise its option. In that instance, the customer would simply keep the Original Investment Payment.

## II. The Contract and Unison Midgard's Unexercised Option

9. In June 2022, Unison purchased from Yang and Cindy T. Yang, an option to acquire an undivided partial interest in the residential real property located at 12150 Ams Run, Carmel, Indiana 46032 ("Ams Run Property"). (*See* Motion ¶¶ 5-10, Exs. 1-5.)

10. Unison acquired the Option through an advanced initial investment payment to the Yangs of $180,915. (*See* Motion ¶ 10, Ex. 1.) The Option is evidence by the following documents:

    a. Unison HomeOwner Option Agreement (Motion Ex. 1);

    b. Unison HomeOwner Covenant Agreement (*Id*. Ex. 2);

    c. The recorded Memorandum of Unison HomeOwner Agreement (*Id.* Ex. 3);

    d. The recorded Unison HomeOwner Mortgage (*Id*. Ex. 4); and

    e. The recorded Assignment of Unison HomeOwner Agreement (*Id*. Ex. 5).

4

11. The Unison HomeOwner Agreement and Unison HomeOwner Covenant Agreement are collectively referred to herein as "the Contract." The recorded Unison HomeOwner Mortgage is referred to herein is "the Mortgage."

12. Unison assigned its rights under the Contract, recorded Memorandum, and Mortgage to Unison Midgard. (*See* Motion Ex. 5.)

13. Under the Contract, Unison Midgard has the right for a period of thirty-years to purchase an undivided 68.92% interest in the Ams Run Property for the remaining sum of $524,654 or as otherwise provided under the terms of the Contract. (*See* Motion ¶ 10, Exs. 1-2.)

14. Unison Midgard has not exercised its Option to date. (*See* Motion ¶¶ 11, 16.)

### III. Yang's Second Unison HomeOwner Agreement

15. The option vehicle is a very profitable alternative for a homeowner. As such, Unison requires in its option agreements that the homeowner expressly represent and warrant that they will occupy the subject property as their "principal residence" throughout the option term. This is intended to prevent homeowners from entering into more than one option agreement with Unison and reflects the reality that a rental property will receive different "wear and tear" than an owner-occupied property.[1]

16. Unison anticipated that some "clever" homeowners may seek to file a bankruptcy and attempt to avoid their option agreements (much in the manner that Yang is attempting to do here). For that reason, Unison records a mortgage against the property to

---

[1] Unison will sometimes allow an option agreement secured by a rental/investment property, but in those instances, Unison offers different pricing.

5

secure the homeowner's obligations under the option agreement, as it did in this case. (*See* Motion Ex. 4.)

17. Before entering into the Contract, Yang entered into an earlier option agreement with Unison secured by a different property that Yang expressly represented and warranted he would occupy as his "principal residence"; and that option agreement is the subject of a similar motion to reject filed by Yang. (*See* ECF No. 98 Ex. 2 at ¶¶ 3.2-3.3, Ex. 3 at 2, ¶ (d).) Yet Yang expressly represented and warranted in the Contract that he would occupy the Ams Run Property as his "principal residence." (*See* Motion at Ex. 2 at ¶¶ 3.2-3.3, Ex. 3 at 2, ¶ (d).) And in his bankruptcy filings, Yang admits that the property securing the earlier agreement (Carlin Ct.) is not his "principal residence," and instead is an "investment property." (*See, e.g.*, ECF No. 58 at 10, ¶ 4.6.)

18. Yang misrepresented to Unison that he would occupy the Carlin Ct. Property as his "principal residence," apparently to obtain the benefit of two Unison agreements and more favorable pricing under the option contract on the Carlin Ct. Property.[2] And now he is trying to "have his cake and eat it too" by rejecting both option agreements and depriving Unison Midgard of the benefit of its bargain. Yang's bad faith tactics are an abuse of process and should not be rewarded.

**IV.  Relevant Procedural History**

19. On January 10, 2023, Yang filed a voluntary petition ("Petition") for relief under Chapter 11 Subchapter V of the United States Bankruptcy Code. (ECF No. 1.)

---

[2] Under the different price offerings, Yang's misrepresentation resulted in Unison paying him approximately $10,850 *more* than if he had truthfully disclosed that the Carlin Ct. Property were in investment property.

6

20. Under Schedule D of Yang's Petition, he listed Unison Midgard as holding a claim secured by the Ams Run Property. (*See* ECF No. 1.)

21. On April 24, 2023, Yang filed his proposed Chapter 11 Subchapter V Plan of Reorganization ("Plan"). (ECF No. 58.) The Plan proposed treating Unison Midgard's Option secured by the Ams Run Property as a mortgage loan in the amount of $127,453.78, payable at an 8% interest rate amortized over thirty years, with monthly payments of $935 to be paid for 120 months, at which time the unpaid balance would become due and payable in full. (*See* Plan ¶ 4.5.) The Plan further proposed treating the "remainder" of Unison Midgard's Option as an unsecured claim in the amount of $53,461.22, payable as a pro-rata share from annual payments of $1,200 made over five years. (*Id*. ¶ 4.10.)

22. On July 5, 2023, Unison Midgard objected to the Plan on the grounds that it did not accurately reflect the mechanics of Unison Midgard's Option; that it improperly sought to treat the Contract as a traditional mortgage loan; that it failed to accurately reflect the true value of the Option; and that it underestimated the value of the Ams Run Property. (*See* ECF No. 92.)

23. A confirmation hearing was held on July 6, 2023, at which Yang's counsel conceded that Unison Midgard's objections were well-taken, and the Court granted Yang time to file an amended plan. (*See* ECF No. 93.)

24. Yang filed his Motion to reject the Contract on August 4, 2023. (ECF No. 97.)

### **Objection**

25. Yang moves to reject the Contract under Section 365, claiming it is an executory contract. Yang's Motion should be denied for at least two reasons: First, the Contract is not executory because Unison Midgard has not exercised its Option, and there

7

were no material unperformed obligations under the Contract as of the petition date. Second, Yang cannot avoid the Mortgage securing the Option because he was not insolvent when he entered into the Mortgage, and he received reasonably equivalent value for the Mortgage.

## I. The Contract is not executory because Unison has not exercised its Option.

26. Under Section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract[.]" 11 U.S.C. § 365(a).

27. The Bankruptcy Code does not define the term "executory contract." Most courts, including the Seventh Circuit, have adopted the definition provided by Professor Vern Countryman. *See, e.g., Matter of Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1172 n.3 (7th Cir. 1996); *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989). Professor Countryman defined executory contract as "a contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Streets & Beard Farm P'ship*, 882 F.2d at 235 (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1974)).

28. Under the Countryman test, courts look "at the obligations as they existed at the date of filing the bankruptcy petition." *In re Orla Enterprises*, 399 B.R. 25, 28 (Bankr. N.D. Ill. 2009) (citations omitted). "If no performance is due by either party on the date of the [petition] filing, the contract is not executory and cannot be rejected under § 365." *Id.*[3]

---

[3] Yang acknowledges that the Countryman test is the applicable legal standard. (*See* Motion ¶ 14.)

29. When applying the Countryman test to option contracts, courts look at "whether the option requires further performance from each party at the time the petition is filed." *In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702, 705 (9th Cir. 1998). "Typically the answer is no, and the option is therefore not executory." *Id.* "Performance due only if the optionee chooses at [its] discretion to exercise the option doesn't count unless [it] has chosen to exercise it." *Id.* at 706. Thus, unless the optionee has exercised its option as of the petition date, an option contract is not executory and cannot be rejected under Section 365. *See id.* at 705-06; *In re Nat'l Fin. Realty Tr.*, 226 B.R. 586, 589–90 (Bankr. W.D. Ky. 1998); *see also Dye v. United States*, 360 F.3d 744, 750 (7th Cir. 2004) (holding option contract was not an executory contract subject to Section 365 where no evidence was presented concerning the optionee's exercise of the option).

30. Here, it is undisputed that Unison Midgard has not exercised its Option under the Contract. (*See* Motion ¶¶ 11, 16.) Moreover, Yang does not (and cannot) point to any material unperformed obligations under the Contract as of the petition date.[4] Thus, under the Countryman test, the Contract is not executory and cannot be rejected under Section 365. *See In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d at 705-06; *In re Nat'l Fin. Realty Tr.*, 226 B.R. at 589–90; *Dye*, 360 F.3d at 750.

---

[4] "While almost all agreements to some degree involve unperformed obligation on either side, such an expansive definition of the term 'executory' is not what Congress enacted through its choice of language in § 365." *Gouveia v. Tazbir*, 37 F.3d 295, 298–99 (7th Cir. 1994) (internal citation omitted). Accordingly, "the Seventh Circuit has held that under the Countryman test, the unperformed obligations must be material to render a contract executory." *In re Conseco, Inc.*, 2005 WL 2737507, at *5 (N.D. Ill. Oct. 18, 2005), *aff'd sub nom. Dick ex rel. Amended Hilbert Residence Maint. Tr. v. Conseco, Inc.*, 458 F.3d 573 (7th Cir. 2006). Here, Yang does not identify *any* unperformed obligations as of the petition date, let alone material obligations. (*See* Motion.)

9

31. Yang nonetheless argues that the Contract is executory because both parties have "remaining obligations" under the Contract. (Motion ¶ 15.) He alleges that Unison Midgard is "obligated" to exercise its Option in the future, and that when it does, it will trigger Unison Midgard's obligations to pay Yang the Balance Payment and "satisfy" the Mortgage, and Yang's obligation to transfer part of his interest in the Ams Run Property to Unison Midgard. (*Id.* ¶¶ 16-17.)

32. But this argument fails because Unison Midgard is not required to exercise its Option under the Contract. Rather, the Contract grants Unison Midgard the right but not the obligation to exercise its Option upon the occurrence of an exercise event. (*See* Motion Ex. 1 at ¶ 6.1 (Unison Midgard "*may* exercise its Option") (emphasis added); Ex. 2 at ¶¶ 4.A.1, 4.B.1, 4.C.1, 4.D.1, 7.2.1 (same)); *see also Olson v. Unison Agreement Corp.*, 2023 WL 5609251, at *2 (W.D. Wash. Aug. 30, 2023) (interpreting a nearly identical Unison option agreement and concluding "Unison is not obliged to exercise its option (if, for example, home prices decrease)"). If Unison Midgard does nothing, its Option will simply lapse without breach. (*See* Motion Exs. 1-2); *see also In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d at 705 ("the optionee need not exercise the option—if [it] does nothing, the option lapses without breach").

33. Moreover, courts have made clear that where, as here, the optionee (Unison Midgard) has discretion to exercise its option and has not done so, the option contract is not executory because the parties have no material unperformed obligations as of the petition date. *See In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d at 705-06; *In re Nat'l Fin. Realty Tr.*, 226 B.R. at 589–90; *Dye*, 360 F.3d at 750.

10

34. Yang cites out-of-circuit cases for the proposition that "an option contract to purchase real estate" is an executory contract under Section 365. (*See* Motion ¶ 18.) But those cases are inapposite.

35. The Florida bankruptcy court in *In re Waldron* questioned the Countryman test, and relied mainly on a policy analysis considering the "nature of the parties and the goals of reorganization" to hold that the option contract in that case was executory. 36 B.R. 633, 637-39 (Bankr. S.D. Fla. 1984). However, the bankruptcy court's decision was later reversed by the Eleventh Circuit because the debtors had abused bankruptcy process by filing their petition for the sole purpose of rejecting the option and "avoid[ing] an enforceable contract." *See In re Waldron*, 785 F.2d 936, 937-41 (11th Cir. 1986). In reversing the bankruptcy court, the Eleventh Circuit reiterated the policy considerations and held that "rejection of the option agreement with [the creditor] would serve no such policy or purpose." *Id*. at 940-41.

36. A minority of courts, including the court in *In re Waldron*, treat the Countryman test as "helpful but not controlling," and hold that the determination of whether a contract is executory requires a "functional" test, "with an eye towards furthering the policies of the Bankruptcy Code." *In re Conseco, Inc.*, 2005 WL 2737507 at *4 (citations omitted). "Under this approach, whether a contract is executory is decided according to the impact that the answer would have on the bankruptcy case." *Id*. (citation omitted).

37. As set forth above, this Court should apply the Countryman test under controlling Seventh Circuit precedent. But even if the Court were to analyze the Contract under the "functional" test, it would not change the conclusion that the Contract is not

11

executory. Yang devotes no argument or analysis in his Motion to how rejection would of the Contract would facilitate the adjustment of his debts through reorganization. If Yang is permitted to reject the Contract, the result would be that Unison Midgard would hold a secured claim for breach of the Contract. As discussed below, the Mortgage cannot be avoided as a matter of law, and, thus, Yang would need to either sell the Ams Run Property or come up with sufficient funds to buy-out the Option, which would frustrate Yang's reorganization efforts—not facilitate them. Similarly, Yang does not allege that he plans to sell or further encumber the Ams Run Property, let alone that Unison Midgard's Option would prevent such action. Moreover, as noted above, Unison Midgard has not exercised its Option and thus Yang has no material unperformed obligations under the Contract. And even if Unison Midgard exercises its Option in the future, Yang will share in any increase in the value of the Ams Run Property. Instead, Yang's motive for seeking to reject the Contract appears to be rooted in nothing more than optionor's remorse. But as the court in *In re Waldon* noted, rejection of a contract that the debtor simply feels is "less attractive than it should be" does not serve the "policy or purpose" of Section 365 or Chapter 11. 785 F.2d at 939-41. Thus, even under the "functional" test, the Contract is not executory and cannot be rejected under Section 365.

38.     The other cases cited by Yang offer no support for his argument. In *Jenson v. Continental Financial Corp.*, the court analyzed a settlement agreement under the Countryman test and held that it was executory because the parties had material unperformed obligations as of the petition date, including the defendants' obligation to make the settlement payment and the plaintiffs' obligation to execute and deliver a covenant not to sue to the defendants. 591 F.2d 477, 481-82 (8th Cir. 1979). Notably, the

12

dispute in *Jenson* did not involve an option contract, and, unlike the settlement agreement in that case, there are no material unperformed obligations under the Contract. *See id.* In *In re Continental Properties*, the court applied the Countryman test and Hawaii state law to a real estate option contact and held that it was *not* executory because the parties had performed their obligations under the option prior to the petition date. 15 B.R. 732, 735-37 (Bankr. D. Haw. 1981).

39. Because Unison Midgard has not exercised its Option, and there were no material unperformed obligations under the Contact as of the petition date, the Contract is not executory and cannot be rejected under Section 365. Accordingly, Unison Midgard's objection should be sustained, and Yang's Motion should be denied.

**II.     Yang cannot avoid the Mortgage.**

40. Even if the Contract is executory (it is not), Yang's Motion should be denied because he cannot avoid the Mortgage securing Unison Midgard's Option.

41. In his Motion, Yang claims—without providing any further explanation or supporting authority—that the Mortgage is "not valid" because Unison Midgard purchased an "Option to Purchase or a 'home equity-sharing agreement,'" and the payment Yang received in exchange for the Option was not a "loan or other form of debt." (*See* Motion at 3, n.1.) Not so.

42. Section 548(a)(1)(B) empowers a trustee to set aside a transfer of the debtor's property within two years before the bankruptcy petition was filed if the transfer amounted to either actual or constructive fraud. It states, in pertinent part, that a trustee "may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of

13

the filing of the petition, if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such a transfer or obligation," and the debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B). Section 522(h) allows a debtor to set aside a fraudulent transfer if the trustee has not attempted to do so. *See* 11 U.S.C. § 522(h).

43. Here, Yang offers no evidence to establish that he was insolvent when he entered into the Mortgage with Unison Midgard, or that he became insolvent as a result of the transaction. To the contrary, it is undisputed that Yang *received* $180,915 from Unison Midgard in connection with the transaction without any added debt, interest, or monthly payments. (*See* Motion ¶ 10, Ex. 1.)

44. Yet even if Yang could satisfy the insolvency requirement, he cannot avoid the Mortgage because he received a reasonably equivalent value for the Mortgage. The Bankruptcy Code does not define the term "reasonably equivalent value." The Seventh Circuit has stated that the test for determining "reasonable equivalent value" requires the court to determine the value of what was transferred and compare it to the value the debtor received. *See Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). Although there is no fixed formula for assessing reasonable equivalence, courts have used the following factors: (1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *See id.*; *In re Knippen*, 355 B.R. 710, 726 (Bankr. N.D. Ill. 2006), *aff'd sub nom. Knippen v. Grochocinski*, 2007 WL 1498906 (N.D. Ill. May 18, 2007).

45.     It is undisputed that Yang received "reasonably equivalent value" for the Mortgage. Unison Midgard paid Yang $180,915 for the option to purchase an undivided 68.92% interest in the Ams Run Property for an agreed-upon price of $524,654 (the balance payment). (Motion ¶ 10, Ex. 1.) The initial investment payment and the balance payment together add up to 68.92% of the original agreed value of the Ams Run Property. (*See* Motion Ex. 1 at 1.) As noted above, Unison Midgard is not obligated to exercise its Option under the Contract. (*See id.* ¶ 6.1; Ex. 2 at ¶ 4.A.1, 4.B.1, 4.C.1, 4.D.1, 7.2.1.) Thus, if the value of the Ams Run Property has *increased* when Unison Midgard is permitted to exercise its Option, then the effective result is both Unison Midgard and Yang share in the appreciation. Indeed, "Unison paid [Yang] valuable consideration [$180,915] to secure an option to participate in the appreciation of [Yang's] property." *Olson*, 2023 WL 5609251 at *2. But if the Ams Run Property *depreciates* by a certain amount, then Unison Midgard will have no economic reason to exercise its Option. And, under this scenario, the Option would eventually lapse, and Yang would simply keep the initial $180,915 investment payment.

46.     Accordingly, Yang's Motion should be denied because he cannot avoid the Mortgage securing Unison Midgard's Option.

## Conclusion

47.     Unison Midgard has not exercised its Option and there were no material unperformed obligations under the Contract as of the petition date. Accordingly, the Contract is not executory, and cannot be rejected under Section 365. At the same time, Yang cannot avoid the Mortgage securing the Option because he was not insolvent at the time he entered into the Mortgage and he received reasonably equivalent value for the Mortgage. For these reasons, Yang's Motion should be denied.

WHEREFORE, Creditor Unison Midgard Holdings, LLC respectfully requests that the Court sustain its objection and deny Debtor Le Yang's Motion to Reject Contract Regarding Ams Run Property (ECF No. 97).

                                           Respectfully submitted,

                                           UNISON MIDGARD HOLDINGS, LLC

                                         By: /s/ Alan M. Ritchie
                                              One of its attorneys

Alan M. Ritchie
Pilgrim Christakis LLP
One South Dearborn, Suite 1420
Chicago, Illinois 60603
Ph. (312) 924-1773
Fax (312) 939-0983
aritchie@pilgrimchristakis.com

## **CERTIFICATE OF SERVICE**

      Alan M. Ritchie, an attorney, certifies that on September 8, 2023, he electronically filed the foregoing UNISON MIDGARD HOLDINGS, LLC'S OBJECTON TO DEBTOR'S MOTION TO REJECT CONTRACT REGARDING AMS RUN PROPERTY with the Clerk of the Court by using the CM/ECF system. Parties may have access to this filing through the Court's system.

Weston E. Overturf
111 Monument Circle, Suite 900
Indianapolis, IN 46204
woverturf@kgrlaw.com

Harrison E. Strauss
101 W. Ohio St., Suite 1000
Indianapolis, IN 46204
harrison.strauss@usdoj.gov

Anthony T. Carreri
111 Monument Circle, Suite 900
Indianapolis, IN 46204
acarerri@kgrlaw.com

Jennifer L. Fisher
Sam S. Zabaneh
Hinshaw & Culbertson LLP
322 Indianapolis Boulevard, Suite 201
Schererville, IN 46375
jfisher@hinshawlaw.com
szabaneh@hinshawlaw.com

Deborah J. Caruso
135 North Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
trusteecaruso@rubin-levin.net

Bryan K. Redmond
8415 Allison Pointe Boulevard, Suite 400
Indianapolis, IN 46250
BRedmond@feiwellhannoy.com

S. Brent Potter
41 East Washington Street, Suite 400
Indianapolis, IN 46204
bankruptcy@doylefoutty.com

U.S. Trustee
46 East Ohio Street, Room 520
Indianapolis, IN 46204
Ustpregion10.in.ecf@usdoj.gov

      I further certify that on September 8, 2023, a copy of the foregoing UNISON MIDGARD HOLDINGS, LLC'S OBJECTON TO DEBTOR'S MOTION TO REJECT CONTRACT REGARDING AMS RUN PROPERTY was mailed via U.S. Mail, proper postage prepaid, to the following:

None.

                              /s/ Alan M. Ritchie